[No. 6645–5–I.   Division One.   May 12, 1980.]

MIKE G. HAMMOND, *Appellant,* v. RUTH E. HAMMOND, *Respondent.*

*Robert G. Perlman, Inc., P.S.,* for appellant.

*Richard W. Swanson,* for respondent.

Andersen, J.—

## FACTS OF CASE

Mike Hammond appeals from an order requiring him to continue making alimony payments to his former wife, Ruth Hammond.

The 1971 divorce decree required Mr. Hammond to pay Ruth Hammond

the sum of $150.00 per month as alimony until she reaches the age of 62, and qualifies for Social Security Benefits.

Because Ruth Hammond is disabled and has a low income, she became eligible for federal benefits in 1977 known as "supplemental security income" (SSI) under the social security act. Also in 1977, Ruth Hammond reached age 62 whereupon Mr. Hammond stopped paying alimony.

It was Mr. Hammond's claim that since his former wife received payments under a provision of the social security act and was 62 years of age, his obligation under the decree to pay alimony ceased. The trial court ruled otherwise and Mr. Hammond appeals.

One issue is presented.

ISSUE

Did the receipt of supplemental security income by Ruth Hammond constitute receipt of "social security benefits" so as to terminate Mr. Hammond's obligation to pay alimony?

DECISION

CONCLUSION. In entering the divorce decree, the trial court did not intend that the obligation to pay alimony would terminate if Ruth Hammond received need–based disability benefits under the supplemental security income provisions of the social security act; therefore, the duty to pay alimony did not cease.

The interpretation of a divorce decree presents a question of law for the court, and in the present case we must ascertain the intention of the trial court which entered the decree. *Callan v. Callan*, 2 Wn. App. 446, 448, 468 P.2d 456 (1970).

The trial judge who ruled on this issue explained the basis of his ruling in a well considered memorandum decision:

> On October 30, 1972, Congress established the Supplemental Security Income program (SSI), codified in 42 USCA Sections 1381–85. This Act, which became effective on January 1, 1974, replaces state administered programs with a new federal program which establishes uniform eligibility criteria, *Hannington vs Weinberger*, D.C.D.C. 393 F Supp. 553 (1975).
>
> Chapter 7 of Title 42, USCA, pertains to Social Security. Subchapter II provides for federal old age, survivors, and disability insurance benefits which are the benefits one normally thinks of as "Social Security." Chapter 7 has a total of [20] subchapters covering a multitude of different special programs including, among other things, federal contributions to state unemployment compensation programs. Subchapter XVI covers SSI.
>
> Eligibility for benefits under SSI are that the recipient be, among other things, either blind, disabled or over 65. Defendant here is receiving SSI on the grounds of disability, such disability being defined in Section 1382c as being disabled for employment by reason of physical or

mental impairment and being subject to an income limitation.

In my view SSI is no more "Social Security" than is unemployment compensation, even though both programs are financed through legislation codified in the chapter of Title 42 pertaining to Social Security. If, in fact, Mrs. Hammond is disabled from working she would have to have some supplement to the $150.00 monthly alimony, as she could hardly be expected to subsist on it. Under the law prior to 1974 presumably she would be receiving public assistance under a state administered program. SSI appears to be a substitute therefor.

■ We agree. Insurance benefits from the social security act are entirely different from public assistance for the aged benefits such as the supplemental security income benefits which Mrs. Hammond receives.

The old–age and disability insurance programs are distinct from the provisions for public assistance to the aged and disabled also contained in the Social Security Act. 42 U.S.C. §§ 301–306, 1351–1355, partially repealed by Pub. L. No. 92–603, §§ 303(a), (b), 86 Stat. 1484; 42 U.S.C. §§ 1381–1383c (1970 ed., Supp. V). The insurance programs are contributory in nature and are designed to prevent public dependency by protecting workers and their families against common economic hazards. Congress in 1935 contemplated that the old–age insurance benefits would be "payable wholly regardless of the need of the recipient." H.R. Rep. No. 615, 74th Cong., 1st Sess., 1 (1935). The public–assistance–for–the–aged program, on the other hand, was designed "to provide for old people who are dependent upon the public for support . . .," *id.,* at 4, and the statute specifically referred to "aged needy individuals." Social Security Act, § 1, 49 Stat. 620. See also H.R. Rep. No. 615, *supra,* at 3–6; S. Rep. No. 628, 74th Cong., 1st Sess., 4–7 (1935); Message of the President Recommending Legislation on Economic Security, H.R. Doc. No. 81, 74th Cong., 1st Sess., 20–28 (1935).

*Mathews v. De Castro,* 429 U.S. 181, 186 n.6, 50 L. Ed. 2d 389, 97 S. Ct. 431 (1976).

The portion of the divorce decree in question tied the cessation of Mr. Hammond's obligation to pay alimony to Mrs. Hammond's reaching age 62 and qualifying for social

security benefits. It is apparent that the trial court which entered the decree intended that the social security benefit be social security *insurance,* not social security *public assistance* such as SSI.

Our reasons are these. Ordinarily, on reaching age 62, Mrs. Hammond would have qualified for social security insurance benefits. She did not do so apparently because she had not accumulated sufficient quarters of coverage to be eligible on her own, and because Mr. Hammond continues to work so she is not qualified for insurance benefits in that manner. 42 U.S.C.A. § 402. Furthermore, the trial court that entered the divorce decree in 1971 could not have had SSI benefits in mind as "social security benefits" because Congress did not establish that program until 1972, and it did not become effective until January 1, 1974. 42 U.S.C.A. § 1381, Historical Note at 359 (1974). *See Hannington v. Weinberger,* 393 F. Supp. 553, 555 (D.D.C. 1975).

Mr. Hammond's alternative claim for a setoff of SSI monies received against the alimony he is to pay is, in effect, a request to modify the divorce decree. Because that relief was not requested in the trial court, it cannot be asserted for the first time on appeal. *Fuqua v. Fuqua,* 88 Wn.2d 100, 105, 558 P.2d 801 (1977).

The order appealed from is affirmed, and in accordance with RCW 26.09.140, respondent Ruth Hammond is awarded $400 as attorneys' fees on appeal together with her statutory costs.

James, A.C.J., and Durham–Divelbiss, J., concur.