[No. 15322-6-I. Division One. February 18, 1987.]

CASA DEL REY, ET AL, *Respondents,* v. RICHARD S. HART, ET AL, *Defendants,* R. REID PARMERTER, *Appellant.*

810

*Mark S. Elgot* and *Murphy & Elgot,* for appellant.

*Kenneth Kaplan* and *Dale Kremer,* for respondents.

WILLIAMS, J.—This appeal is a continuation of a quiet title action brought by Casa del Rey, a limited partnership, against R. Reid Parmerter, John Flynn, Richard Hart and others. The first opinion was reported as *Casa del Rey v. Hart,* 31 Wn. App. 532, 643 P.2d 900, *review denied,* 98 Wn.2d 1006 (1982). That opinion set out the facts of the case as developed on the motion for summary judgment. This court remanded the case to the trial court to determine whether the apartment building was part of Edward Grubbe's "earnings and accumulations," which would be available to the legal process of his creditors under RCW 26.16.200. After trial, the court entered findings of fact on

that point as follows:

Edward C. Grubbe and Linda Grubbe were husband and wife constituting a marital community in the State of Washington from October 3, 1975, through their sale of the Casa to plaintiff on March 21, 1978.

Finding of fact 2.

The total cash down payment expended for the purchase of the three parcels of real property (The Gordon, the Casa and the Dubois) by Ralph S. Bullock and Donna Bullock and Edward C. Grubbe and Linda Grubbe from Homer R. Fairfield and M. Maureen Fairfield was $5,000, which $5,000 was recited as earnest money on the purchase of the Casa.

Finding of fact 5.

The $5,000.00 down payment for the three properties purchased by the Bullocks and Grubbes from the Fairfields was paid entirely by Ralph Bullock.

Finding of fact 6.

In September, 1976, Homer and M. Maureen Fairfield commenced a lawsuit against Ralph Bullock and Donna Bullock, his wife, and Edward Charles Grubbe, Jr. and his wife Linda Grubbe and Ralph S. Bullock asserting that the Quit Claim Deed to the Casa from the Fairfields to Bullock and Grubbe was obtained through the use of fraud and misrepresentation and was without force and effect.

Finding of fact 7.

In December of 1976, Homer and Maureen Fairfield, Ralph Bullock, Donna Bullock, Edward C. Grubbe and Linda Grubbe entered into a Settlement Agreement that provided that Ralph and Donna Bullock and Edward C. and Linda Grubbe would purchase the Casa pursuant to the terms of a Real Estate Contract. The Settlement Agreement provided for the refinancing of the Casa by the Bullocks and Grubbes. Pursuant to the terms of the Settlement Agreement, Edward C. and Linda Grubbe gave to Homer and M. Maureen Fairfield a Promissory Note in the amount of $10,000 and a mortgage on community real property owned by Linda and Edward C. Grubbe. The Promissory Note, Mortgage, Settlement Agreement and Real Estate Contract were executed by

both Edward C. and Linda Grubbe. Pursuant to the Settlement Agreement referred to above, Ralph and Donna Bullock and Edward C. and Linda Grubbe obtained a loan for $200,000.00 on the Casa from Prudential Mutual Savings Bank. The loan is represented by a Note and Agreement and First Deed of Trust. The proceeds of the loan were used to pay off underlying encumbrances on the Casa including the Real Estate Contract between Homer and M. Maureen Fairfield and their sellers (the Petersons), and certain other encumbrances. Pursuant to the loan transaction, Homer and M. Maureen Fairfield gave to Ralph and Donna Bullock and Edward and Linda · Grubbe a Statutory Warranty Deed dated March 14, 1977 vesting title to the Casa in the Bullocks and Grubbes for the first time. Prior to this date the Grubbes and Bullocks had only a Real Estate Contract vendee's interest in the Casa.

Finding of fact 8.

The Settlement Agreement and Real Estate Contract referred to above recite that $5,000.00 was paid as a downpayment on the purchase of the Casa del Rey apartment house to the "Fairfields by the Bullocks and Grubbes." This $5,000.00 was paid entirely by Ralph Bullock and not in any part by Edward C. Grubbe.

Finding of fact 9.

Ralph Bullock managed and operated the Casa. Edward C. Grubbe did not expend any work, energy or labor in managing and operating the Casa.

Finding of fact 10.

Such labor as was expended by Edward C. Grubbe in arranging the initial earnest money agreement from the Fairfields and further dealings regarding the property on behalf of Linda and Edward C. Grubbe was the community labor of Edward C. Grubbe. The only other thing used by Edward C. and/or Linda Grubbe in the acquisition of the Casa was use of the community credit of the marital community of Edward C. and Linda Grubbe.

Finding of fact 11.

Edward C. Grubbe did not use any of his earnings and accumulations, separately owned property or community earnings in the purchase, ownership and management of the Casa.

Finding of fact 12.

From these findings the court concluded:

> No "earning and accumulation" of Edward C. Grubbe was used in the acquisition of the Casa by the marital community of Edward C. and Linda Grubbe. The Casa was not an "earning and accumulation" of Edward C. Grubbe.

Conclusion of law 9.

> Any interests of either Edward C. Grubbe or Linda Grubbe in the Casa was entirely the result of their community credit and passed to plaintiff upon their execution of the Statutory Warranty Deed dated March 21, 1978.

Conclusion of law 12. The trial court entered judgment quieting title to the apartment building in Casa del Rey and extinguishing any interest Parmerter, Flynn and Hart might have in the property. The trial court denied Casa del Rey's request for attorney fees. Parmerter appeals and Casa del Rey cross–appeals.

The principal issue was framed in the earlier opinion as follows:

> under the provisions of RCW 26.16.200, both Edward Grubbe's earnings and accumulations are subject to his child support obligation which was reduced to judgment within 3 years of Edward's marriage to Linda. *See Watters v. Doud,* 92 Wn.2d 317, 322, 596 P.2d 280 (1979). However, there has been no showing as to what Edward and Linda Grubbe used to acquire their interest in the Casa del Rey property. Because the trial court made no finding on this critical issue, we must remand this case to the trial court. Only if the Casa del Rey property was an earning and accumulation of Edward Grubbe, was it subject to levy of execution for the Calhoun judgment.

(Footnote omitted.) *Casa del Rey,* at 540.

RCW 26.16.200 (Laws of 1969, 1st Ex. Sess., ch. 121, § 1) provides:

> Antenuptial and separate debts, liability for. Neither husband or wife is liable for the debts or liabilities of the other incurred before marriage, nor for the separate debts of each other, nor is the rent or income of the sep-

arate property of either liable for the separate debts of the other: *Provided,* That the earnings and accumulations of the husband shall be available to the legal process of creditors for the satisfaction of debts incurred by him prior to marriage, and the earnings and accumulations of the wife shall be available to the legal process of creditors for the satisfaction of debts incurred by her prior to marriage. For the purpose of this section neither the husband nor the wife shall be construed to have any interest in the earnings of the other: *Provided further,* That no separate debt may be the basis of a claim against the earnings and accumulations of either a husband or wife unless the same is reduced to judgment within three years of the marriage of the parties.

As seen, the trial court on remand found as a fact that Edward and Linda Grubbe acquired their interest in the Casa del Rey property by extending their community credit and not by contributing any of their "earnings or accumulations" either separate or community. The findings are supported by substantial evidence, and Parmerter does not challenge any of them except number 12. As to that finding, he argues that as a matter of law "accumulation" means any property which a person acquires and retains. That is not the law in Washington where "accumulation" means property similar to a spouse's earnings, such as retirement benefits, *In re Marriage of Donovan,* 25 Wn. App. 691, 694, 612 P.2d 387 (1980), disability pension, *In re Marriage of Huteson,* 27 Wn. App. 539, 542–43, 619 P.2d 991 (1980), and compensation for diminished earning capacity, *In re Marriage of Brown,* 100 Wn.2d 729, 738, 675 P.2d 1207 (1984). The apartment building is not property similar to Grubbe's earnings or earning capacity and, thus, is not an "accumulation."

Further, permitting the antenuptial judgment against Grubbe to be a lien on the apartment building would conflict with the clear implication of RCW 26.16.040[1] that

---

[1]RCW 26.16.040 provides:

"Community realty subject to liens, execution. Community real estate shall be subject to the liens of mechanics and others for labor and materials furnished in

judgments recovered for separate debts are not liens on community real property. *See Brotton v. Langert,* 1 Wash. 73, 81, 23 P. 688 (1890).

Determining that Grubbe's interest in the apartment building is an "accumulation" would also be inconsistent with the 1983 amendment to RCW 26.16.200, which changed the second proviso to read as follows:

*Provided further,* That no separate debt, except a child support or maintenance obligation, may be the basis of a claim against the earnings and accumulations of either a husband or wife unless the same is reduced to judgment within three years of the marriage of the parties. The obligation of a parent or stepparent to support a child may be collected out of the parent's or stepparent's separate property, the parent's or stepparent's earnings and accumulations, and the parent's or stepparent's share of community personal and real property. Funds in a community bank account which can be identified as the earnings of the nonobligated spouse are exempt from satisfaction of the child support obligation of the debtor spouse.

This amendment distinguishes "earnings and accumulations" from both "separate property" and a spouse's "share of community personal and real property." *See Danley v. Cooper,* 62 Wn.2d 179, 182, 381 P.2d 747 (1963). Grubbe's interest in the apartment building is part of his share of community real property; thus, it is not part of his earnings and accumulations.

Parmerter also argues that this 1983 amendment to RCW 26.16.200 should be applied retroactively. A similar argument regarding the 1969 amendment to this statute, which added the two provisos, was rejected in *National Bank of Commerce v. Green,* 1 Wn. App. 713, 720–22, 463 P.2d 187 (1969). For the same reasons, we reject Parmerter's contention.

Because Grubbe's interest in the apartment building is

---

erecting structures and improvements thereon as provided by law in other cases, to liens of judgments recovered for community debts, and to sale on execution issued thereon."

not an "accumulation," we need not decide whether the antenuptial judgment for child support was a "debt" under RCW 26.16.200 or whether Flynn's and Hart's execution and levy were proper.

Pursuant to RAP 18.9(a), Casa del Rey requests sanctions, in the form of attorney fees on appeal, on the ground that Parmerter's claim was made in bad faith and without reasonable cause. This appeal presented debatable issues upon which reasonable minds might differ and was not so totally devoid of merit that there was no reasonable possibility of reversal. *See Streater v. White,* 26 Wn. App. 430, 435, 613 P.2d 187, *review denied,* 94 Wn.2d 1014 (1980). Thus, sanctions should not be imposed.

The other issues raised on appeal have already been decided in the prior appeal, were not raised at trial or are without substantial merit.

The judgment is affirmed.

SWANSON and PEKELIS, JJ., concur.

Review granted by Supreme Court May 5, 1987.